UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAKESHORE ENGINEERING
SERVICES, INC.,

        Plaintiff,                            Case No. 13-14498
                                                    Paul D. Borman
v.                                           United States District Judge

TARGET CONSTRUCTION, INC.,

        Defendant.
_____/

**OPINION AND ORDER**
**(1) GRANTING PLAINTIFF'S APPLICATION/MOTION TO CONFIRM**
**ARBITRATION AWARD (Dkt. No. 1) AND (2) DENYING DEFENDANT'S**
**MOTION TO VACATE ARBITRATION AWARD (Dkt. No. 4)**

Before the Court are Plaintiff Lakeshore Engineering Services, Inc.'s ("Plaintiff") Application/Motion to Confirm Arbitration Award (Dkt. No. 1) and Defendant Target Construction, Inc.'s ("Defendant") Motion to Vacate Arbitration Award (Dkt. No. 4). Defendant's Motion to Vacate Award is also titled as a Response to Plaintiff's Application and Motion to Confirm Arbitration Award. Plaintiff filed a Response to Defendant's Motion to Vacate on November 25, 2013. (Dkt. No. 8). Defendant then filed its Reply. (Dkt. No. 9). A hearing on this matter was held on February 4, 2014.

This action is a companion to an earlier filed case in this Court, *Lakeshore Engineering Services, Inc. v. Jeff Fegert, et al*., No. 12-11071 ("*Fegert*"). That case was previously stayed pending this arbitration proceeding. (*See* No. 12-11071, Dkt. No. 11, Stipulated Order Staying case pending Arbitration and Allowing Lakeshore Engineering Services, Inc. Leave to file its First Amended Verified Complaint). On December 9, 2013, Magistrate Judge David R. Grand

granted Plaintiff's Motion to Lift Stay and for Leave to File Second Amended Complaint in *Fegert*. (No. 12-11071, Dkt. No .18). On January 13, 2014, Defendants Jeff Fegert and Steve Fulmer filed a Motion to Dismiss for Lack of Personal Jurisdiction and Motion for Summary Judgment in *Fegert*. (No. 12-11071, Dkt. No. 21).

## I. BACKGROUND

This action arises out of a construction project in St. Charles Parish, Louisiana. On March 2, 2010, the United States Army Corps of Engineers ("Army Corps") contracted with Plaintiff to complete the "construction of the project sometimes referred to as the 'Cross Bayou Drainage Structure – Phase 2/LPV 07b.2,'" or Army Corps "Project Number W912P8-10-C-0050." (Def.'s Br., Ex. 1, Fegert Aff., ¶ 3). Eventually, Plaintiff subcontracted the majority of this project to Defendant.

Plaintiff and Defendant entered into contract negotiations in June and July of 2010. (Pl.'s Resp., Ex. 1, Schmuck Dep. at 46). Plaintiff submitted a draft subcontract to Defendant. On August 11, 2010, Edward Riggs marked up the proposed draft subcontract, entitled "Cross Bayou Contract No. W912P8-10-C-0050 ("Subcontract"), and returned it to Plaintiff's project executive, Jignesh Patel.[1] (Pl.'s Resp. Ex. 3, Subcontract and cover letter). Defendant did not change or alter the "Governing Law and Arbitration" provision in ¶ 20.1 in the Subcontract. (*Id*. at 15). Plaintiff never signed Defendant's marked up draft of the Subcontract. There is no dispute, however, that Defendant began work on site in August 2010.

On November 22, 2010, the parties executed a Change Order, which referenced

---

[1] The Subcontract is also titled "Subcontract Agreement No. LES-TCI-0C01-001". (Pl.'s Resp., Ex. 3, Subcontract at 1).

2

"Contract Number W912P8-10-0050-C" and set forth "[t]he following items have been added to Targets contract..." and listed demolition deconstruction, granular backfill, dewatering embankment, embankment, "rip rap" and "excavation TRS".  (Pl.'s Resp. Ex. 4, Change Order).  This document included a total amount owing for the contract as $6,091,043.00 and included the signature of both parties.  (*Id*.).

On February 9, 2011, Defendant sent an email to Plaintiff which stated that a copy of the "sub contract Eddie and Dawn settled with..." was attached and asked if Plaintiff required a "copy of addendum/change order 1, as well?"  (Def.'s Br., Ex. 3, Email chain).  Plaintiff's representative, Dawn Schmuck, replied to that email stating "The originals were not left with me.  I fedexed three originals to Eddie in the Texas office.  I never agreed to a mark up especially one I never saw.  I was told by Eddie he sent the two originals to Jignesh for review.  The statements that you have made are not accurate."  (*Id*.).

Eventually, a dispute regarding work performance arose between Plaintiff and Defendant.  On March 2, 2011, Army Corps issued Plaintiff a notice regarding its progress on the project and sought a detailed narrative explaining how the project would be completed on schedule.  (Pl.'s Resp., Ex. 7, Army Corps Letter at 1).  Plaintiff represents it forwarded this notice to Defendant and requested the narrative.  Defendant, in turn, sent Plaintiff a letter that referred to title of the Subcontract "LES-TCI-0C01-001", claimed Plaintiff was in "default", and made numerous references to the "Subcontract."  This included the statement "[o]ur Subcontract was based on the Contract Plans you provided us ... [w]e must either agree on a price for the additional work or delete this item form the scope of our Subcontract."  (Pl.'s Resp., Ex. 8, 3/07/11 Letter, 1-2).

On approximately March 15, 2011, Plaintiff terminated Defendant from the project and

found a replacement contractor to complete the work. (Pl.'s Motion to Affirm, ¶11).

On June 29, 2011, pursuant to ¶ 20.1 of the Subcontract, Plaintiff filed a demand for Arbitration with the American Arbitration Association ("AAA"), claiming Defendant materially breached the Subcontract. (Pl.'s Resp. Ex. 11, Demand of Arbitration). On July 22, 2011, Defendant filed its Answering Statement, Answer and Counterclaim, which stated in a "preliminary statement, special appearance and reservation of rights" that Defendant was:

> filing its answer and counterclaim in this proceeding in order to preserve its rights and remedies, Target appears specially for purposes of doing so, and Target specifically denies that it has an agreement to arbitrate any disputes with Lakeshore, including the issues for which Lakeshore has demanded arbitration in this proceeding. Target denies that the AAA or any other arbitration body or arbitrator(s) have jurisdiction over Target.

(Pl.'s Resp., Ex. 12, Def.'s Answering Statement, Answer and Counterclaim at 2). Defendant's Answer also specifically admitted that the parties "entered into a subcontract ... which described the terms and conditions upon which work would be performed. This subcontract includes an arbitration provision. The value of this subcontract between Lakeshore and Respondent (including an agreed upon change order) is $6,031,043." (Demand of Arbitration, ¶3; Def.'s Answer, at ¶3, "Target admits the allegations of paragraph three of the Demand."). On April 1, 2012, Defendant filed an Amended Counterclaim which again restated that it continued to object to the "jurisdiction of the Arbitrator to hear this matter."[2] (Pl.'s Resp., Ex. 13, Def.'s Amend. Counterclaim at ¶1).

---

[2] The section in its entirety reads: "This matter is before the Arbitrator based upon the arbitration provision of the *unsigned* Contract between the parties (hereinafter subcontract agreement). Based upon the fact that [t]here is no executed agreement between Lakeshore and Target, Target has objected, and continues, to object to the jurisdiction of the Arbitrator to hear this matter." (Def.'s Amend. Counterclaim at ¶1 (emphasis in original)).

Defendant's Amended Counterclaim asserted a claim for breach of contract, tort, statutory relief and unjust enrichment and sought more than a million dollars in damages from Plaintiff. There is no dispute that Defendant participated in the Arbitration proceedings which included a "lengthy discovery which included the exchange of thousands of documents and at least 16 depositions", 8 days of hearings and the testimony of 10 witnesses. (Pl.'s Motion to Affirm, ¶¶ 18-19).

On October 15, 2013, the Arbitrator issued his Arbitrator's Standard Final Award, finding that Defendant had "materially breached the Subcontract" and Plaintiff's termination of the Subcontract was proper and justified. (Pl.'s Motion to Affirm, Ex. 4, Award). The Award provided for net damages in the amount of $2,525,666.30 with interest on the net recovery to Plaintiff. (*Id.*). Defendant was awarded "nothing or zero on its counterclaim". (*Id.*).

Thereafter, Plaintiff filed the instant Application/Motion to Affirm the Arbitration Award and Defendant responded by seeking to Vacate the Arbitration Award for the reason that no binding Subcontract (or arbitration provision) existed and therefore the arbitrator was without jurisdiction to issue the Award.

## II. LEGAL STANDARD

The parties do not dispute that the Federal Arbitration Act ("FAA") applies to this action.[3] *See Uhl v. Komatsu Forklift, Co., Ltd.*, 512 F.3d 294, 303 (6th Cir. 2008) (noting that "[t]he FAA applies only to written arbitration provisions in 'contract[s] evidencing a transaction involving commerce' and 'maritime transaction.'"). The Court notes that the standard for review

---

[3] Defendant moves this Court to vacate the arbitration award solely pursuant to 9 U.S.C. § 10(a)(4) (Def.'s Br. at 6). The Plaintiff affirmatively states in its Response that the FAA governs "the enforceability of the current arbitration Award." (Pl.'s Resp. at 10).

5

for a confirmation of an arbitration award is a highly deferential standard. The United States Court of Appeals for the Sixth Circuit has explained that "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co. v. Home Ins. Co*., 278 F.3d 621 (6th Cir. 2002) (citation omitted) (*Nationwide I*). "The [FAA] expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. Co. v. Home Ins. Co*., 429 F.3d 640, 643 (6th Cir. 2005) (citing 9 U.S.C. § 9) ("*Nationwide III*"). And "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of this authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id*. (quoting *United Paperworkers Int'l Union v. Misco, Inc*., 484 U.S. 29, 38 (1987)).

A court may only vacate an arbitration award in "very limited circumstances." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 845 (6th Cir. 2003) ("*Nationwide II*"). One of the proscribed limited circumstances is "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). The Sixth Circuit has instructed "that arbitrators do not exceed their authority unless they display a manifest disregard of the law, which means more than mere error in interpretation of application of the law." *Barrick Enterprises, Inc. v. Crescent Petroleum, Inc*., 496 Fed. Appx. 614, 619 (6th Cir. 2012) (internal quotation marks and citation removed).

### III. ANALYSIS

A.  **Subject Matter Jurisdiction**

As an initial matter, in reviewing this action it is clear that Plaintiff has failed to set forth in its Application and Motion to Confirm Arbitration Award a viable basis for subject matter jurisdiction. Although Defendant does not dispute the basis of subject matter jurisdiction, the

issue "may be raised at any time, by any party or even *sua sponte* by the court itself." *Ford v. Hamilton Investments, Inc*., 29 F.3d 255, 257 (6th Cir. 1994) (quotation omitted).

In its Application, Plaintiff relies solely upon Sections 6 and 9 of the Federal Arbitration Act ("FAA") for subject matter jurisdiction. (*See* Dkt. No. 1, Application/Motion to Affirm, ¶¶ 5-6). Section 9, states

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon, the court must grant such an order unless the award is vacated, modified, or corrected...

9 U.S.C. § 9. Section 6, states in relevant part that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6.

The Sixth Circuit has explained that "Section 4 of the Federal Arbitration Act, which says that a party to an agreement to arbitrate may seek an enforcement order from a federal district court 'which save for such agreement, would have jurisdiction under Title 28,' obviously contemplates that 'there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." *Ford*, 29 F.3d at 258 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 25 n. 32 (1983)). The Sixth Circuit has also specifically held that Sections 9 and 10 of the FAA do not "constitute a grant of subject matter jurisdiction." *Ford*, 29 F.3d at 257-58.

However, upon review of Plaintiff's Application it is clear that diversity jurisdiction exists as Plaintiff is a Michigan corporation, Defendant is a Nevada corporation and the Arbitration Award provides for net damages against Target in amount of $2,525,666.30. *See* 29

U.S.C. § 1332; *Ford*, 29 F.3d at 260 (relying upon the arbitration award to determine the amount in controversy); Pl's Application, ¶¶ 1-2, 21). Therefore, Plaintiff's Application is properly before this Court.

**B.     Defendant's Motion to Vacate**

The Court next turns to Defendant's Motion to Vacate as Defendant relies upon it as its sole basis for opposing the Motion to Confirm the Arbitration Award.

Defendant argues that pursuant to the FAA the Award must be vacated because there was no binding arbitration agreement and therefore the arbitrator exceeded his powers. *See* 9 U.S.C. § 10(a)(4). Specifically, Defendant contends that no binding Subcontract was formed between the parties and as a result there was no valid agreement to arbitrate, ergo the arbitrator was without jurisdiction (and exceeded his powers) to issue an award.

**1.     Waiver**

The Court first addresses Plaintiff's claim that Defendant has waived its right to challenge the jurisdiction of the arbitrator (or put another way, Defendant's objection to arbitrability) by actively participating in the arbitration proceedings for more than two years. Defendant argues there has been no waiver because it formally preserved this challenge by timely objecting to the arbitrator's lack of jurisdiction in its Answering Statement, Answer, and Amended Counterclaim during the arbitration.

The Sixth Circuit has held that "[a] party may waive its objection to the jurisdiction of the arbitrators by acquiescing in the arbitration with knowledge of the possible defect." *Nationwide II*, 330 F.3d at 846 (citing *Order of Ry. Conductors & Brakemen & Brotherhood of R.R. Trainmen v. Clinchfield R.R. Co.*, 407 F.2d 985 (6th Cir. 1969)). Further, "[t]he party

claiming waiver carries the burden of proof." *Nationwide II*, at 846 (citing *Cordrey v. Euckert*, 917 F.2d 1460, 1465 (6th Cir. 1990)).

The Sixth Circuit has not set forth a bright-line test for determining when waiver has occurred, although many courts have held that a party cannot "await the outcome [of an arbitration] and then later argue that the arbitrator lacked authority to decide the matter." *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1149 (10th Cir. 2007) (holding "it is clear that our usual rules regarding waiver and estoppel apply to prevent a party from complaining about the enforceability of an arbitration agreement if he already has fully participated in arbitration without any relevant objection."); *see also Nagrampa v. MailCoups, Inc*. 469 F.3d 1257, 1279 (9th Cir. 2006) (noting that "[u]nlike in the arbitration cases where we have found waiver, Nagrampa forcefully objected to arbitrability at the outset of the dispute, never withdrew that objection, and did not proceed to arbitration on the merits of the contract claim. Thus, she did not waive her right to challenge the arbitrability of the dispute."); *Four Seasons Hotel & Resorts v. Consorcio Barr S.A.*, 377 F.3d 1164, 1171 & n.5 (11th Cir. 2004) (noting a party did not waive its argument of arbitrability when the party had "argued from the very beginning of the arbitral proceeding that the panel did not have the authority to arbitrate the dispute. In addition Consorcio filed suit in Venezuela to prevent the arbitration from proceeding. It cannot be said that Consorcio 'willingly and without reservation' submitted to the arbitration. On the contrary, it did virtually everything within its power to prevent the arbitration from going forward."); *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc*., 320 F.3d 362, 368-69 (2d Cir. 2003) (holding that Bodylines objected repeatedly to arbitration and "to the extent that Bodylines participated in the arbitration hearings in order to resolve the question of arbitrability

itself, such participation does not constitute waiver.").

In the present action Plaintiff relies upon *Nationwide II*, and contends that Defendant has waived its objection to arbitrability because it "acquiesced" to the arbitration by participating in the arbitration for more than two years and submitting a counterclaim to the arbitrator. *See Nationwide II*, 330 F.3d at 846. Plaintiff also contends that Defendant failed to vigorously object to the issue of arbitrability because it did not submit the issue to the arbitrator or seek an earlier remedy from this Court (by way of a collateral suit or an action to enjoin the arbitration). Plaintiff claims that as a result of these actions Defendant cannot enjoy the fruits of a "wait and see approach" by now seeking to have this Court vacate an unfavorable award based on lack of jurisdiction.

Defendant contends that it "repeatedly and consistently objected to the jurisdiction of the Arbitrator" because it stated in its Answering statement, Answer and Amended Complaint that it only appeared "specially for [the] purposes" of preserving its rights and remedies and denied it had an agreement to arbitrate with Plaintiff or that the AAA had jurisdiction over Defendant. (*See* Def.'s Br. Ex. 5, Answering Statement and Answer). Defendant claims that waiver only occurs when a party fails to clearly preserve and object to arbitrability. *Bodylines Inc.*, 320 F.3d at 368-69.

The Court finds that Plaintiff has carried its burden and shown that Defendant waived its right to object to the arbitrability of this action. Defendant's argument that it "repeatedly and consistently" objected to arbitrability of this action (or the arbitrator's jurisdiction) is a gross misrepresentation of the record. While Defendant did make exactly three references to preserving the objection (in its Answering Statement, Answer, and Amended Counterclaim)

every other action by Defendant belies these assertions.

First, Defendant admitted in its Answer that it executed the Subcontract with Plaintiff and the Subcontract contained the arbitration provision in question. (*See* Def.'s Answer, at ¶ 3). Defendant also filed a counterclaim for more than a million dollars against Plaintiff and actively pursued that counterclaim during the arbitration – an action in complete conflict with its claim that it only appeared in the arbitration to preserve its rights to challenge jurisdiction. Further, Defendant failed to make any statement or reservation of rights regarding its challenge to jurisdiction or the validity of the Subcontract (or arbitration provision) in its Prehearing brief. (*See* Pl.'s Ex. 14, Def.'s Prehearing Brief).

Additionally, in complete contrast to its current argument that the Subcontract is not binding, Defendant argued in its counterclaim and Prehearing brief that Plaintiff breached the terms of the Subcontract.[4] Also, there is nothing in the record to indicate that Defendant ever brought up its objections regarding the validity of the Subcontract or arbitration provision or stated to the arbitrator that it was appearing to preserve its jurisdictional challenge during the eight days of arbitration hearings.[5] Finally, the Court notes that Defendant never sought to halt

---

[4] Defendant argues in its Prehearing brief that Plaintiff "failed to follow the termination requirements in the subcontract", and that Plaintiff "eventually wrongfully terminated Target, in violation of the express default and termination provisions of the subcontract." (*Id*. at 2, 5).

[5] The Court notes that Defendant makes a half hearted attempt to claim in its Reply that it is not arguing that there was not a "Subcontract" but merely that the "Subcontract" was not the marked up document that contained the arbitration provision that Plaintiff relied upon. Defendant claims "some kind" of subcontract existed between the parties just not the draft Defendant marked up. (*See* Def.'s Reply at 3-4). Defendant claims that all of its previous references to "Subcontract" "do not equate to an admission that the written "Subcontract" advanced by Lakeshore was ever effective and binding on the parties. (*Id*.). This argument (which is addressed more thoroughly later) is spurious.

the arbitration proceedings through an action in this Court or any other court.

Defendant claims it timely objected to arbitrability and relies upon the Second Circuit Court of Appeals decision in *Bodylines* for the argument that a party only waives a challenge to arbitrability if it "participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration..." *Id.*, 320 F.3d at 368. Defendant also claims that it followed the AAA Construction Rules by objecting to the arbitrator's jurisdiction in its Answering Statement and Plaintiff "has not pointed to any authority for the proposition that a party must do more than set forth such an objection."[6] (Def.'s Reply, at 1; *see also* AAA Const. Rules R-9(c)).

Defendant's reliance upon *Bodylines* is misplaced. Defendant's actions are easily differentiated from the objecting party in *Bodylines*, where that party "objected repeatedly to arbitration" which was evidenced by on-going correspondence between the parties and the fact that the issue of arbitrability was submitted to the arbitrators. *Bodylines*, 320 F.3d at 368. The objecting party also sought a temporary restraining order and preliminary injunction from a state court prior to the arbitration hearing. *Id.* at 367. In the current action, Defendant made a

---

[6] Defendant appears to concede through this argument that it is bound by the AAA Construction Rules as provided in the Arbitration Provision in the Subcontract. (*See* Subcontract, ¶ 20.1). Rule 9 further provides that the Arbitrator "shall" have the power to rule on his own jurisdiction "including any objections with respect to the existence, scope or validity of the arbitration agreement" and also that the Arbitrator "shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part." AAA Const. Rules 9(a)-(b), *see* AAA "Construction Arbitration Rules & Mediation Procedures," ADR.ORG, http://www.adr.org/aaa/faces/rules/searchrules/rulesdetail?doc=ADRSTG_007210&_afrLoop=2069491138760163&_afrWindowMode=0&_afrWindowId=zydymhvn2_98#%40%3F_afrWindowId%3Dzydymhvn2_98%26_afrLoop%3D2069491138760163%26doc%3DADRSTG_007210%26_afrWindowMode%3D0%26_adf.ctrl-state%3Dzydymhvn2_154 (last accessed on January 29, 2014).

showing of formally objecting to jurisdiction and appearing "specially" only to object to jurisdiction, but clearly and repeatedly contradicted these assertions by its actions. Specifically, Defendant submitted a counterclaim seeking damages for Plaintiff's alleged breach of the Subcontract to the arbitrator and participated in eight days of hearings, sixteen depositions, exchanging thousands of documents in discovery all without making another peep regarding the lack of jurisdiction of the arbitrator or making a claim that the Subcontract (or arbitration provision) was not binding.

Now, after participating fully in arbitration (save the formal objections in the Answering Statement, Answer and Amended Complaint), admitting in its Answer that it entered into the Subcontract with Plaintiff which contained an Arbitration Agreement, and actively pursuing a counterclaim against Plaintiff in arbitration, Defendant wants this Court to vacate the unfavorable result. Defendant would not likely be making these same arguments had the arbitrator found in Defendant's favor. It is well settled that a party cannot "await the outcome and then later argue that the arbitrator lacked authority to decide the matter." *Lewis*, 500 F.3d at 1149; *accord Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 674 (5th Cir. 2002) ("It is well settled that a party my not sit idle through an arbitration procedure and then collaterally attack the procedure on grounds not raised before the arbitrators when the result turns out to be adverse.") (citing *Marino v. Writers Guild of Amer., East, Inc*., 992 F.2d 1480, 1484 (9th Cir. 1993); *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) ("If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter.").

The Court finds Defendant's pro forma objections regarding jurisdiction at the beginning

of the arbitration cannot override its implicit agreement to jurisdiction and arbitrability through its consistent and undisputed actions over the course of more than two years. To allow Defendant to take full advantage of the arbitration proceeding and vigorously pursue a counterclaim against Plaintiff while still (quietly and only at the initial stages of the proceeding) "preserving" the right to collaterally challenge the jurisdiction of an unfavorable arbitration award flies in the face of fairness and judicial economy. For these reasons, the Court holds that Defendant has waived its objection to arbitrability and any argument that the Subcontract (and Arbitration provision) is not binding or enforceable.

**2.      The Subcontract and Arbitration Provision are Binding and Enforceable**

Even if the Court were to find that Defendant had not waived its argument that the Subcontract and arbitration provision are not binding and unenforceable, Defendant's Motion to Vacate the Award still fails. Pursuant to both Michigan and Louisiana law the Subcontract was binding and accordingly so was the Arbitration provision it contained, therefore, the arbitrator did not exceed his powers by issuing an Award.

Defendant argues that because the Subcontract between the parties (which contained the arbitration provision) was unsigned and rejected by Plaintiff there was no binding Subcontract and as a result the arbitration provision contained therein is also not binding or enforceable.[7] Defendant then contends that without a binding arbitration provision, the arbitrator was without

---

[7] Plaintiff appears to misunderstand Defendant's argument and argues that the arbitration provision need not be signed to be binding. The Court notes that while this argument is misplaced, Plaintiff is correct that pursuant to the FAA a binding arbitration provision does not need to be signed by the parties but merely "written". *See* 9 U.S.C. § 2 (stating the provision must be "written"); *Seawright v. Amer. Gen. Fin. Serv's, Inc*. 507 F.3d 967, 978 (6th Cir. 2007) (holding "arbitration agreements under the FAA need to be written, but not necessarily *signed*." (emphasis in original) (citing cases).

jurisdiction to issue an award and ipso facto exceeded his powers.[8]

The Federal Arbitration Act, 9 U.S.C. § 2, recognizes a "national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Seawright v. Amer. Gen. Fin. Servs., Inc*. 507 F.3d 976, 972 (6th Cir. 2007) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).

> While the courts must respect the liberal federal policy favoring arbitration agreements, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.  Thus, the underlying question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

*Seawright*, 507 F.3d at 972 (internal citations and quotations marks removed).

The Supreme Court has explained that because arbitration agreements are "fundamentally contracts", courts must evaluate the enforceability of such an agreement "according to the applicable state law of contract formation."  *Seawright*, 507 F.3d at 972 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)).  Therefore, "[s]tate contract law ... governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros., Inc*., 340 F.3d 386, 393 (6th Cir. 2003).

In the present action, Plaintiff asserts that Michigan law is the state law that must be applied to determine whether a valid contract was formed pursuant to the choice of law agreement in the Subcontract.  Defendant argues that Louisiana state law is applicable based on

---

[8] Defendant conflates the argument of whether the Subcontract is binding with the inquiry of whether the arbitration provision is binding and enforceable.  Defendant makes no separate argument that the arbitration provision in the Subcontract is not binding beyond the argument that the Subcontract itself is not binding.

15

Michigan's choice of law rules. The Court need not decide which law applies, however, because under both state's contract laws, the Subcontract is binding and enforceable because there is clear evidence the parties mutually assented to the Subcontract through their actions.

    **a.    Mutual Assent to the Subcontract**

Pursuant to Louisiana contract law, "[a] contract is formed by consent of the parties through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing or by action or inaction that under the circumstances clearly indicates consent." *Enterprise Prop. Grocery, Inc. v. Selma, Inc.*, 882 So.2d 652, 655 (La. Ct. App. 2004) (citing LA. CIV. CODE ANN. art. 1927 (1984)). "[I]n the absence of a legal requirement, [when] the parties have contemplated a certain form, it is presumed they do not intend to be bound until the contract is executed in that form." *Id*. (citing LA. CIV. CODE ANN. art. 1947 (1984)). "Absent a signature or a signing of an agreement, the effect or validity of the agreement may be shown by the actions and conduct of the parties." *Hurley v. Fox*, 520 So.2d 467, 469 (La. Ct. App. 1988) (citation omitted).

Michigan law provides for a similar result. Under Michigan law, the primary goal when interpreting a contract is to give effect to the intent of the parties. *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n.28 (1994); *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63-64 (2000). Under Michigan law, to establish a contract exists, there must have been a "meeting of the minds" or mutual assent to all material facts. *Kamalnath v. Mercy Mem. Hospital Corp.*, 194 Mich. App. 543, 503 (Mich. Ct. App. 1992). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. (citation omitted). In a recent Michigan Court of Appeals decision,

16

*Novodai, Inc. v. Pro-Cam Serv.*, No. 310000, 2013 WL 3835959 (Mich. Ct. App. Jul. 25, 2013), the court found that a mutual release of claims was valid despite the plaintiff's failure to sign the document because there was an offer, plaintiff agreed to the release, and there was mutual assent to all the essential terms and "[t]he parties thereafter completed the required performances under the mutual release." *Id.* at *7. The court noted that a "meeting of the minds can be found from performance and acquiesce in that performance." *Id.* at *7 (citing *Sanchez v. Eagle Alloy, Inc.*, 245 Mich. App. 651, 666 (2003)).

In the present action, Plaintiff drafted the Subcontract and sent it to Defendant for review. Defendant made changes to certain terms (but notably not to the arbitration provision) and sent back the signed, Subcontract as a counter-offer. Plaintiff never signed the counter-offer. Defendant relies upon the lack of Plaintiff's signature on its counter-offer, and an email from one of Plaintiff's representatives stating that she never signed the counter-offer as evidence that there was no mutual assent or agreement to the Subcontract as a whole.

There is clear evidence in the record, however, that Plaintiff accepted the counter-offer through its subsequent actions and both parties performed in accordance to its terms regardless of Plaintiff's failure to sign the Subcontract or Plaintiff's email purportedly rejecting the Subcontract. This evidence includes (but is not limited to): (1) Defendant's admission in its Answer that it executed the Subcontract which contained the arbitration provision; (2) the November 22, 2011 change order which referenced and incorporated the Subcontract by identifying number and is signed by both parties; (3) Defendant's allegations and statements in its Amended Counterclaim and Prehearing brief against Plaintiff seeking damages pursuant to Plaintiff's breach of the Subcontract; (4) Defendant's 3/07/11 letter which references the

17

Subcontract by identifying number and attempts to enforce its terms and conditions; (5) Defendant's signed waivers for payments which reference the Subcontract's identifying number (Pl.'s Resp. Ex. 6, Def.'s Partial Waiver and Releases); and (6) Defendant's applications for payments in accordance to the amount set forth in the Subcontract and referring to the Subcontract number (Pl.'s Resp. Ex. 5, Def's Payment Applications).[9]

Therefore, under Michigan law there is ample and overwhelming evidence that both Plaintiff and Defendant mutually assented to the terms of the Subcontract and both parties performed pursuant to its terms and attempted to enforce its provisions. Finally, Defendant has not set forth any action by Plaintiff (or itself) that is inconsistent with the terms or provisions of the Subcontract (for example there is no dispute that the price terms, payment provisions, and specified work differed). Thus, pursuant to Michigan law it is clear that the parties' performance evidences mutuality of assent to the Subcontract as a whole.

The Subcontract is also binding and enforceable under Louisiana law. One could argue that there is a presumption that the parties originally contemplated that they not be bound by the Subcontract until it was signed. *See* LA. CIV. CODE ANN. art. 1947. This presumption is easily rebutted, however, by the parties' subsequent performance and clear acknowledgments of their acceptance of the Subcontract through correspondence, payment applications, waivers, and admissions and arguments in the arbitration documents. In *Enterprise*, the Louisiana Court of Appeals found that an unsigned lease was enforceable against the landlord because the parties' "subsequent performance" of payment and acceptance of the new lease amount, continued

---

[9] Given this overwhelming evidence of both parties' acceptance of the Subcontract as a whole, Defendant's attempts in its Reply to construe its references to the "Subcontract" as references to an amorphous, undefined set of legal obligations, is completely without foundation.

occupancy and testimony from the lessee rebutted "any presumption that the parties needed to sign the lease to be bound". *Enterprise*, 882 So.2d at 656. The Louisiana court also found that this evidence overcame a letter from the landlord notifying the lessee that the lease was not valid. *Id*. The result in the instant case is the same where the overwhelming evidence rebuts a presumption that the parties needed to sign the Subcontract to be bound by its terms. This same evidence also refutes any argument that a single email from one of Plaintiff's representatives disavowing the marked up Subcontract is determinative of mutual assent.

Defendant appears to argue that the Subcontract is not binding under Louisiana law because there was no signature or mutual assent as to all of its terms. To this end, Defendant relies upon *Pennington Construction, Inc. v. R.A. Eagle Corp*., 652 So.2d 637 (La. Ct. App. 1995), a case in which the court held there was no binding contract when both parties were attempting to enforce competing contracts signed only by one party after a "battle of the forms." *Id*. at 638-39. These circumstances do not exist here. In the instant action there was no battle of the forms and Plaintiff admits it was bound by Defendant's signed counter-offer. Both parties expressed their mutual consent to these terms through their subsequent performance. Therefore, pursuant to Louisiana law, the Subcontract and its arbitration provision is binding.

**C.     Motion to Confirm the Arbitration Award**

As the Court finds that Defendant's Motion to Vacate the Award be denied, the Court also holds that Plaintiff's Application/Motion to Confirm the Award is granted. Pursuant to Section 9 of the FAA, "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon, the court <u>must</u> grant such an order unless the award is vacated, modified, or corrected..." 9

U.S.C. § 9 (emphasis added).  As set forth above, Defendant has failed to show there is any reason to vacate, modify or correct the Award and therefore the Award is confirmed.

## IV. CONCLUSION

For these reasons, the Court **DENIES** the Defendant's Motion to Vacate the Arbitration Award (Dkt. No. 4) and **GRANTS** the Plaintiff's Application/Motion to Confirm the Arbitration Award (Dkt. No. 1).

SO ORDERED.

        s/Paul D. Borman  
        PAUL D. BORMAN  
        UNITED STATES DISTRICT JUDGE

Dated:  February 27, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 27, 2014.

        s/Deborah Tofil  
        Case Manager